The relief described hereinbelow is SO ORDERED.

Signed April 13, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

HARRY STUART BECKERLE,　　　　　　　　　　　　　　　　　Case No. 06-20572
　　　　　　Debtor.　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13

**MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION**

Confirmation of Debtor's Chapter 13 plan is pending before the Court.[1] The Chapter 13 Trustee objects because Debtor's proposed plan runs less than five years and pays nothing to unsecured creditors.[2] The Court, having reviewed the relevant pleadings and having considered counsel's argument, denies confirmation because the plan does not comply with 11 U.S.C. § 1325(b)(4).

*Findings of Fact*

The parties do not dispute the facts.[3] Debtor filed for Chapter 13 relief on April 28, 2006.

---

[1] Doc. No. 10. Debtor Harry Stuart Beckerle appears by Tracy L. Robinson, Kansas City, Missouri. Trustee William H. Griffin appears in person and by Dianna J. Lord.

[2] Doc. No. 17.

[3] Doc. Nos. 22 and 33.

07.04.13 Beckerle ACP.wpd

Debtor's Form B22C indicates the Debtor's income is above median, but Debtor's disposable income under the means test is negative $1,498.52. Comparing Schedules I and J, Debtor has monthly disposable income of $123.86. The plan proposes to pay $120.00 per month for 38 months. Non-priority unsecured creditors will receive nothing under the plan.

*Discussion*

This contested matter is a core proceeding over which the Court has jurisdiction.[4]

The issue before the Court is whether the applicable commitment period created in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") determines a minimum plan length or a minimum monetary return to unsecured creditors.

The relevant revisions in BAPCPA begin at 11 U.S.C § 1325(b). The pertinent portion of the statute reads as follows:

> **(1)** If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> . . . .
> > **(B)** the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> **(2)** For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
> . . . .
> **(3)** Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–

---

[4] 28 U.S.C. §§ 157(b)(2)(L) and 1334.

-2-

07.04.13 Beckerle ACP.wpd

Case 06-20572    Doc# 42    Filed 04/13/07    Page 2 of 6

   **(A)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

. . . .

 **(4)** For purposes of this subsection, the "applicable commitment period"--

   **(A)** subject to subparagraph (B), shall be--

     **(i)** 3 years; or

     **(ii)** not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--

       **(I)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

. . . .

   **(B)** may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

*Applicable Commitment Period*

  The "Applicable Commitment Period" is a time frame of either three or five years under the plain language of 11 U.S.C. § 1325(b)(4)(A)(i) and (ii). A plan may terminate earlier only if unsecured creditors are paid in full.[5] Section 11 U.S.C. § 1325(b)(4)(A)(i) and (ii) provide a fixed measure of time as opposed to a "multiplier" or "monetary" interpretation urged by debtors.[6]

  The monetary interpretation would allow above-median debtors to calculate a pot for unsecured creditors by multiplying their monthly disposable income taken from Form B22C[7] by the 60 months in their Applicable Commitment Period.[8] By increasing plan payments, debtors

---

  [5] 11 U.S.C. § 1325(b)(4)(B).

  [6] *See, e.g., In re Davis*, 348 B.R. 449 (Bankr. E.D. Mich. 2006); *In re McGuire*, 342 B.R. 608, 614-15 (Bankr. W.D. Mo. 2006); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006); *In re Dew*, 344 B.R. 655 (Bankr. N.D. Ala. 2006).

  [7] Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

  [8] *See, e.g., In re Fuger,* 347 B.R. 94 (Bankr. D. Utah 2006)

-3-

07.04.13 Beckerle ACP.wpd

Case 06-20572   Doc# 42   Filed 04/13/07   Page 3 of 6

could pay the pot in less than five years, without paying unsecured creditors in full. The monetary interpretation is urged in cases where Form B22C shows zero or negative disposable income because applying the formula would result in no Applicable Commitment Period.[9] The rationale is there is no reason to extend plans if there is no requirement that debtors pay a dividend to unsecured creditors.

However, the plain language of the Code does not require a set dividend to unsecured creditors; rather, the Code language requires a minimum number of years for debtors to commit their projected disposable income - whatever the amount may be. If debtors can meet the other confirmation requirements of §1322 and §1325, then debtors must also meet the Applicable Commitment Period requirement of § 1325(b)(4) to be confirmed.[10] Both *Davis* and *Zirtzman* are on point and instructive. Both cases involved above-median debtors with negative disposable income as calculated on Form B22C. Debtors in both cases proposed plans with feasible plan payments of $650.44 and $300.00 per month, respectively. Debtors in both cases even proposed to provide a small pot to unsecured creditors in the approximate amount of $2,500.00. However, both plans drew objections because the debtors proposed 36-month plans. *Davis* presents a comprehensive history and analysis as to why § 1325(b)(4) imposes a minimum plan length, rather than a calculation of a minimum monetary amount. This Court is persuaded by its reasoning.

First, the language of § 1325(b)(1) and (4) is temporal, describing a time frame of years, not a multiplier of months. Second, a monetary interpretation renders § 1325(b)(4)(B)

---

[9] *Id.*; *see also In re Alexander,* 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006) (while holding Applicable Commitment Period is a temporal requirement, court found the requirement irrelevant in cases where debtors' Form B22C disposable income was zero or less).

[10] *Davis*, 348 B.R. at 458; *In re Zirtzman*, slip copy 2006 WL 3000103 (Bankr. N.D. Iowa 2006).

07.04.13 Beckerle ACP.wpd

meaningless.[11] Interpreting the statute to require debtors to multiply projected monthly disposable income times 36 or 60 unless a lesser number results in full payment of allowed claims says nothing more than debtors do not have to pay more than 100 percent on unsecured claims. Third, a monetary interpretation, in addition to having no statutory support, would be a gross departure from pre-BAPCPA practice requiring a three-year minimum for debtors' best efforts to repay debts. Fourth, the monetary interpretation is inconsistent with other BAPCPA revisions regarding debtors' ongoing financial reporting requirements.[12] Form B22C is merely the starting point in determining projected disposable income to be received in the Applicable Commitment Period pursuant to 11 U.S.C. §1325(b)(1).[13] The term "projected disposable income to be received in the applicable commitment period"[14] is a forward-looking time commitment by its plain language.

Further, as *Zirtzman* notes, a negative disposable income number on Form B22C does not conclusively establish the debtor has no disposable income to be received in the Applicable Commitment Period. Indeed, a feasible plan payment proposal rebuts the presumption that Form B22C alone determines disposable income.[15] A negative number on Form B22C indicates a plan is not feasible.[16] However, if the debtor can propose a feasible plan payment, then the debtor has shown there is, in fact, disposable income, and the plan must last for five years if his income is

---

[11] *Davis,* 348 B.R. at 455 citing *Schanuth,* 342 B.R. at 606.

[12] For example, 11 U.S.C. § 521(f) requiring submission of annual, post-petition tax returns; 11 U.S.C. §521(a)(1)(B)(vi) requiring disclosure of any anticipated increase in income or expenses in the 12 months following petition date.

[13] *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006).

[14] 11 U.S.C. § 1325(b)(1)(B).

[15] *See, e.g., In re Jass*, 340 B.R. 411 (Form B22C may be rebutted with evidence of actual numbers).

[16] *See, e.g., In re Schanuth*, 342 B.R. at 601 (plans with plan payments in excess of their disposable income are not feasible).

above median.[17] Debtors cannot have it both ways. If they want to rely exclusively on Form B22C with a negative disposable income number, then they cannot propose a feasible plan. On the other hand, a feasible plan payment commits debtors to a certain plan length, for the above-median income debtor, of no less than five years. The Court does not find, however, that Schedules I and J necessarily determine the Debtor's plan payment. The Debtor's plan payment amount is not an issue in this case.

### *Conclusion*

Debtor's plan cannot be confirmed because it does not provide for a five-year Applicable Commitment Period. Debtor relies on his Form B22C to avoid the appearance of any disposable income, but relies on Schedules I and J to calculate a feasible plan payment. Based upon the plain language of 11 U.S.C. § 1325(b)(1) and (4), the Code imposes a minimum plan length. Being above-median, the Debtor must propose a plan that runs five years.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[17] *Zirtzman*, 2006 WL 3000103, at *4.

-6-
07.04.13 Beckerle ACP.wpd

Case 06-20572   Doc# 42   Filed 04/13/07   Page 6 of 6